Docket No. 104471.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

JOHN F. CINKUS, Appellant, v. THE VILLAGE OF STICKNEY MUNICIPAL OFFICERS ELECTORAL BOARD *et al.*, Appellees.

*Opinion filed March 20, 2008.–Modified April 23, 2008.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Fitzgerald, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

John Cinkus filed nomination papers to be a candidate in the April 17, 2007, election for village trustee in the Village of Stickney. The Village of Stickney municipal officers electoral board (Board) found Cinkus ineligible for office pursuant to section 3.1–10–5(b) of the Illinois Municipal Code (65 ILCS 5/3.1–10–5(b) (West 2006)). On judicial review, the circuit court of Cook County set aside the Board's decision and ordered that Cinkus' name be placed on the ballot. The appellate court reversed the order of the circuit court and confirmed the Board's decision. 373 Ill. App. 3d 866. We allowed Cinkus' petition for leave to appeal (210 Ill. 2d R. 315), and now affirm the judgment of the appellate court.

# I. BACKGROUND

The record contains the following pertinent facts. On April 27, 2006, a law enforcement officer issued to Cinkus a citation for disorderly conduct in violation of section 16–7 of the Stickney Municipal Code (Stickney Municipal Code §16–7 (1981), now codified as Stickney Municipal Code §50–32). On May 25, 2006, an administrative hearing was held on the citation. Cinkus appeared and contested the charge. The village hearing officer found Cinkus liable as charged and ordered him to pay a fine of $100. Cinkus was granted a continuance for payment pending administrative review. On September 28, 2006, payment was continued to November 16, 2006. On that date, Cinkus failed to appear, and the village entered judgment against Cinkus for the $100 fine. On November 21, 2006, the Village served notice of judgment on Cinkus.[1]

Cinkus filed his nomination papers on February 5, 2007, which was the final day to do so, for the office of Stickney village trustee in the April 17, 2007, consolidated election. On February 12, 2007, Sam Esposito timely filed a petition objecting to Cinkus' candidacy. See 10 ILCS 5/10–8 (West 2006). Esposito invoked section 3.1–10–5(b) of the Illinois Municipal Code, which provides, in part, that a person "is not eligible for an elective municipal office if that person is in arrears in the payment of a tax or other indebtedness due to the municipality." 65 ILCS 5/3.1–10–5(b) (West 2006). In his objector's petition, Esposito alleged that Cinkus was "in arrears in the payment of indebtedness in the amount of $100.00 to the Village of Stickney as evidenced by the attached 'Notice of Judgment Entered' and therefore is ineligible to be elected to Trustee of the Village of Stickney."

Cinkus filed a motion to dismiss. Included with the motion was an affidavit, in which Cinkus stated under oath as follows. The objector's petition informed Cinkus that he was indebted to the village in the amount of $100. On February 14, 2007, Cinkus went to the village hall and appeared at the business payment window. Cinkus showed a village employee a copy of the notice of judgment and offered to pay the debt. The employee was advised that she could not accept

---

[1] See generally 65 ILCS 5/1–2.1–1 *et seq.* (West 2006) (home rule unit adjudication of ordinance violations).

payment; however, she suggested that Cinkus see Officer Torres, who was the village code enforcement officer and who signed the notice of judgment. On February 16, 2007, Cinkus met with Officer Torres, who also refused to accept payment, but advised Cinkus to speak with the village mayor or treasurer. Cinkus went to the village treasurer. According to the affidavit: "I understood from my conversation with the Treasurer that his hands were tied and he could not accept payment." Cinkus then wrote a check payable to the village for the $100 judgment, wrote the case number on the check, and inserted it through the payment window at the village business office, announcing that he was paying his debt.[2]

On February 16 and 22, 2007, the Board held a hearing on Esposito's objection.[3] Esposito presented as evidence Cinkus' citation for disorderly conduct and the judgment entered against Cinkus in the amount of $100. Esposito rested his case. Cinkus asked the Board to grant his motion to dismiss "for failure of the Objector [Esposito] to establish a prima facie case." Cinkus' sole contention at the hearing, as stated in his motion to dismiss, was that section 3.1–10–5(b) of the Illinois Municipal Code "limits eligibility to the *office* and not to *candidacy* for the office." (Emphases in original.) Relying on *People v. Hamilton*, 24 Ill. App. 609 (1887), Cinkus contended: "All a candidate must do is pay the debt before assuming the office and he is eligible to hold the office." At the close of the hearing, the Board sustained Esposito's objection, finding:

---

[2] Section 1–2.1–8(e) of the Illinois Municipal Code sets forth the following procedure:

> "A hearing officer may set aside any judgment entered by default and set a new hearing date, upon a petition filed within 21 days after the issuance of the order of default, if the hearing officer determines that the petitioner's failure to appear at the hearing was for good cause or at any time if the petitioner establishes that the municipality did not provide proper service of process." 65 ILCS 5/1–2.1–8(e) (West 2006).

[3] Cinkus' check was brought to the hearing, placed in an envelope and retained to determine what was to be done with it at the conclusion of the hearing. The record does not indicate the disposition of the check.

"That the candidate [Cinkus] is not eligible to be a candidate for the elected municipal office sought under [section 3.1–10–5(b) of the Illinois Municipal Code], as he is indebted to the Village of Stickney in the amount of $100.00 by virtue of a judgment entered against him in that amount which, as of the date of the filing of the Objector's Petition, was unpaid."

The Board declared Cinkus' nomination papers to be invalid and ordered that his name not be printed on the ballot for the April 17, 2007, consolidated election.

Cinkus timely filed a petition for judicial review in the circuit court (see 10 ILCS 5/10–10.1 (West 2006)). In his petition and supporting brief, Cinkus initially denied that he was in arrears in the payment of a debt owed to the village. He argued that: (1) the notice of judgment did not prescribe the procedure or time for payment; and (2) he did pay the debt prior to the Board hearing. Cinkus alternatively contended that, even if he was in arrears in the payment of a debt to the village, section 3.1–10–5(b) of the Illinois Municipal Code is not a basis to strike his nomination papers and exclude his name from the ballot. On March 15, 2007, the circuit court set aside the Board's decision and ordered Cinkus' name to be placed on the April 17, 2007, ballot.

Esposito appealed, and on April 6, 2007, the appellate court filed its decision. Relying on the plain language of section 3.1–10–5(b) of the Illinois Municipal Code (65 ILCS 5/3.1–10–5(b) (West 2006)), read as a whole, the court concluded that being in arrears of a debt to a municipality precludes eligibility to run for municipal office. The appellate court reversed the order of the circuit court, confirmed the Board's decision, and further ordered that "if removal of Mr. Cinkus' name from the ballot cannot be accomplished prior to election day, the Board shall be required to disregard any votes cast for him in determining the winner of the election." No. 1–07–0700 (unpublished order under Supreme Court Rule 23). The appellate court subsequently refiled its decision as a published opinion. 373 Ill. App. 3d 866. On April 17, 2007, Cinkus filed his petition for leave to appeal to this court (210 Ill. 2d R. 315). We will refer to additional pertinent background in the context of our analysis of the issues.

-4-

## II. ANALYSIS

The "sole question presented" to the appellate court involved the interpretation of section 3.1–10–5(b) of the Illinois Municipal Code (65 ILCS 5/3.1–10–5(b) (West 2006)). 373 Ill. App. 3d at 868. We view this issue as dispositive. However, prior to addressing the merits, we must first address several preliminary matters.

### A. Mootness

Esposito invites us to declare this case moot. A case on appeal becomes moot where the issues presented in the trial court no longer exist because events subsequent to the filing of the appeal render it impossible for the reviewing court to grant the complaining party effectual relief. *In re A Minor*, 127 Ill. 2d 247, 255 (1989) (collecting cases). In this case, the April 17, 2007, election obviously has come and gone. Indeed, Cinkus filed his petition for leave to appeal on the day of the election. According to Esposito, Cinkus sought to have his name placed on the April 17, 2007, ballot and that is no longer possible.

However, one exception to the mootness doctrine allows a court to resolve an otherwise moot issue if that issue involves a substantial public interest. The criteria for application of the public interest exception are: (1) the question presented is of a public nature; (2) an authoritative resolution of the question is desirable to guide public officers; and (3) the question is likely to recur. *Lucas v. Lakin*, 175 Ill. 2d 166, 170 (1997); *A Minor*, 127 Ill. 2d at 257. A clear showing of each criterion is necessary to bring a case within the public interest exception. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 395 (1994). The present case meets this test. This appeal raises a question of election law, which inherently is a matter of public concern. Also, this issue is likely to recur in a future municipal election. Being in arrears of a debt owed to a municipality can involve common items, such as unpaid parking tickets or village utility bills. Thus, an authoritative resolution of the issue is desirable to guide public officers. Therefore, we decline to dismiss this appeal as moot. We proceed to additional preliminary matters.

## B. Standard of Review

We next determine our standard of review. The circuit court reviewed the Board's decision pursuant to section 10–10.1 of the Election Code (10 ILCS 5/10–10.1 (West 2006)). This court views an electoral board as an administrative agency. See *Kozel v. State Board of Elections*, 126 Ill. 2d 58, 68 (1988) ("As an administrative agency established by statute, an electoral board may exercise only the powers conferred upon it by the legislature"). A circuit court does not have original jurisdiction over objections to nomination papers. The legislature has vested the electoral boards, and not the courts, with original jurisdiction to hear such disputes. *Geer v. Kadera*, 173 Ill. 2d 398, 407 (1996); 10 ILCS 5/10–9 (West 2006) (designating electoral boards "for the purpose of hearing and passing upon the objector's petition").

Prior to 1967, the Election Code provided that "the decision of a majority of the electoral board shall be final." Ill. Rev. Stat. 1965, ch. 46, par. 10–10. Courts interpreted this language as precluding judicial review of electoral board decisions, except upon the limited issue of whether a decision was clearly fraudulent. See *Telcser v. Holzman*, 31 Ill. 2d 332, 339 (1964); *People ex rel. Schlaman v. Electoral Board*, 4 Ill. 2d 504, 507-09 (1954); *Wiseman v. Elward*, 5 Ill. App. 3d 249, 253 (1972). However, in 1967, the legislature added section 10–10.1 to the Election Code. 1967 Ill. Laws 597, 604. Section 10–10.1 now provides that "a candidate or objector aggrieved by the decision of an electoral board may secure judicial review of such decision in the circuit court of the county in which the hearing of the electoral board was held." 10 ILCS 5/10–10.1 (West 2006). By use of the phrase "judicial review," the legislature did not intend to vest a circuit court with jurisdiction to conduct a *de novo* hearing into the validity of a candidate's nomination papers. Rather, the statute manifests the legislative intent that judicial review of discrepancies in nomination papers is limited to, and must not exceed, a board's record. *Geer*, 173 Ill. 2d at 407-08; *Wiseman*, 5 Ill. App. 3d at 254-55. Although the applicable provision in section 10–10.1 does not expressly adopt the procedure provided in the Administrative Review Law (735 ILCS 5/3–101 *et seq.* (West 2006)), it is substantially the same. See *Dillavou v. County Officers Electoral Board*, 260 Ill. App. 3d 127, 131 (1994); *Williams v. Butler*, 35 Ill. App. 3d 532, 538 (1976).

In *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191 (1998), this court identified three types of questions that a court may encounter on administrative review of an agency decision: questions of fact, questions of law, and mixed questions of fact and law. As a result, "[t]he applicable standard of review depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law." *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board*, 216 Ill. 2d 569, 577 (2005), citing *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). An administrative agency's findings and conclusions on questions of fact are deemed *prima facie* true and correct. In examining an administrative agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of the agency. Instead, a reviewing court is limited to ascertaining whether such findings of fact are against the manifest weight of the evidence. An administrative agency's factual determinations are against the manifest weight of the evidence if the opposite conclusion is clearly evident. *City of Belvidere*, 181 Ill. 2d at 204; see *Reyes v. Bloomingdale Township Electoral Board*, 265 Ill. App. 3d 69, 72 (1994); *Dillavou*, 260 Ill. App. 3d at 131 (collecting cases). In contrast, an agency's decision on a question of law is not binding on a reviewing court. For example, an agency's interpretation of the meaning of the language of a statute constitutes a pure question of law. Thus, the court's review is independent and not deferential. *City of Belvidere*, 181 Ill. 2d at 205; see *Reyes*, 265 Ill. App. 3d at 72.

Mixed questions of fact and law "are 'questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " *American Federation of State, County & Municipal Employees*, 216 Ill. 2d at 577, quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19, 72 L. Ed. 2d 66, 80 n.19, 102 S. Ct. 1781, 1790 n.19 (1982). Prior to *City of Belvidere*, this court had held that where the "facts are undisputed," the legal result of those facts is "a question of law," which is reviewed *de novo*. See, *e.g.*, *Chicago Patrolmen's Ass'n v. Department of Revenue*, 171 Ill. 2d 263, 271 (1996). However, in *City of Belvidere,*

this court held for the first time that an examination of the legal effect of a given state of facts involves a mixed question of fact and law with a standard of review of "clearly erroneous." *City of Belvidere*, 181 Ill. 2d at 205. In *AFM Messenger Service,* this court explained that an administrative agency's decision is deemed "clearly erroneous" when the reviewing court is left with the " 'definite and firm conviction that a mistake has been committed.' " *AFM Messenger*, 198 Ill. 2d at 391-95, quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).

We acknowledge that the distinction between these three different standards of review has not always been apparent in our case law subsequent to *AFM Messenger.* See, *e.g.*, *International Union of Operating Engineers, Local 148 v. Illinois Department of Employment Security*, 215 Ill. 2d 37, 62 (2005); *Eden Retirement Center, Inc. v. Department of Revenue*, 213 Ill. 2d 273, 284 (2004). However, we reaffirm *City of Belvidere*'s distinction between the three standards of review, as well as *AFM Messenger*'s elucidation of the "clearly erroneous" standard of review. See, *e.g., Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 142-44 (2006); *American Federation of State, County & Municipal Employees*, 216 Ill. 2d at 577-78; *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 368-69 (2002).

Also, where a circuit court reviews an electoral board's decision pursuant to section 10–10.1 of the Election Code, we review the decision of the board, not the court. See *Pascente v. County Officers Electoral Board*, 373 Ill. App. 3d 871, 873 (2007); *Lockhart v. Cook County Officers Electoral Board*, 328 Ill. App. 3d 838, 841 (2002). We now must ascertain what issues are–and are not–properly before us.

C. Issues Not Preserved for Review

Before this court, Cinkus raises what he describes as a factual issue. Cinkus argues that the judgment entered against him was "ambiguous and uninformative. *** The judgment itself gave no date as to when it was to be paid, and absent a due date, there could be no arrearage. Even if it had, the candidate did, in fact, tender payment." Therefore, according to Cinkus, the Board's finding that he was in

arrears in the payment of a debt owed to the village was against the manifest weight of the evidence.

Esposito initially responds that Cinkus failed to present this argument to the Board and, therefore, it is procedurally defaulted. It is quite established that if an argument, issue, or defense is not presented in an administrative hearing, it is procedurally defaulted and may not be raised for the first time before the circuit court on administrative review. *Leffler v. Browning*, 14 Ill. 2d 225, 227-29 (1958); see *Lebajo v. Department of Public Aid*, 210 Ill. App. 3d 263, 268 (1991). The rule of procedural default in judicial proceedings applies to administrative determinations, so as to preclude judicial review of issues that were not raised in the administrative proceedings. The rule is based on the demands of orderly procedure and the justice of holding a party to the results of his or her conduct where to do otherwise would surprise the opponent and deprive the opponent of an opportunity to contest an issue in the tribunal that is supposed to decide it. *Robert S. Abbott Publishing Co. v. Annunzio*, 414 Ill. 559, 565 (1953). Additionally, raising an issue for the first time in the circuit court on administrative review is insufficient. The rule of procedural default specifically requires first raising an issue before the administrative tribunal rendering a decision from which an appeal is taken to the courts. Given that in administrative review cases the circuit courts act as the first-tier courts of review, the reason and logic behind that requirement are clear. See *Smith v. Department of Professional Regulation*, 202 Ill. App. 3d 279, 287 (1990).

In his reply brief, Cinkus claims that he "did, indeed, argue the insufficiency of the evidence of the judgment at the hearing before the Board, so he has not waived the issue for review." To say the least, Cinkus misapprehends the record. He does not–and cannot–cite to anywhere in the record before the Board where he contested the sufficiency of the evidence of the judgment entered against him. In his motion to dismiss the objector's petition, Cinkus did not mention the sufficiency of the judgment. Rather, Cinkus contended solely that section 3.1–10–5(b) of the Illinois Municipal Code did not preclude his eligibility to run for office. At the Board hearing, Cinkus did not argue that the judgment entered against him was invalid or insufficient in any way. Again, his argument focused exclusively on his interpretation of section 3.1–10–5(b), under which the judgment did

not preclude his eligibility to run for office. We hold that Cinkus' arguments pertaining to the validity of the judgment are procedurally defaulted.

In the course of his argument that section 3.1–10–5(b) of the Illinois Municipal Code did not preclude his eligibility to run for office, Cinkus briefly refers to due process principles. In his petition for judicial review in the circuit court, Cinkus sought reversal of the Board's decision "as it is contrary to law, against the manifest weight of the evidence, arbitrary and capricious and violates Due Process." The circuit court entered an order, prepared by Cinkus' counsel, which found that the Board's decision was "contrary to law, arbitrary and capricious, violates Due Process and is against the manifest weight of the evidence." Cinkus contends that his interpretation of section 3.1–10–5(b) comports with constitutional principles and that the contrary interpretation would be unconstitutional.

Esposito initially responds that this argument is procedurally defaulted. Again, issues or defenses not presented to the administrative agency will not be considered for the first time on administrative review. This rule of procedural default encompasses a litigant's right to question the validity of a statute. To be sure, an administrative agency lacks the authority to declare a statute unconstitutional, or even to question its validity. Nonetheless, this court has repeatedly advised that a party in an administrative proceeding should assert a constitutional challenge on the record before the administrative tribunal, because administrative review is confined to the evidence offered before the agency. Such a practice avoids piecemeal litigation and, more importantly, allows opposing parties a full opportunity to refute the constitutional challenge. *Carpetland*, 201 Ill. 2d at 396-97, quoting *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278-79 (1998); see *Smith*, 202 Ill. App. 3d at 287 (observing that rule of procedural default in administrative review "applies equally to issues involving constitutional due process rights"); *Benjamin v. Board of Election Commissioners*, 122 Ill. App. 3d 693, 696-97 (1984) (holding that constitutional argument was procedurally defaulted for failure to present it to board).

In his reply brief, Cinkus attempts to avoid the procedural default of this issue. He first contends that he presented his due process

-10-

argument in his petition for judicial review in the circuit court. However, as we explained above, this contention "is meritless." *Smith*, 202 Ill. App. 3d at 287 (raising issue for first time in circuit court is insufficient to preserve issue for administrative review). Further, Cinkus invokes the principle that procedural default is a limitation on the parties rather than on this court's jurisdiction, and that the doctrine of procedural default may be relaxed when necessary to maintain a uniform body of precedent or where the interests of justice so require. See *Carpetland*, 201 Ill. 2d at 397; *Texaco-Cities*, 182 Ill. 2d at 279. However, after reviewing the record, we conclude that this not such a case. We hold that Cinkus' constitutional argument is procedurally defaulted.

D. Eligibility for Office: Arrearage of Debt Owed to Municipality

We are left with the sole question that was presented to the appellate court: the correct interpretation of section 3.1–10–5(b) of the Illinois Municipal Code (65 ILCS 5/3.1–10–5(b) (West 2004)). As he argued before the Board, Cinkus contends that section 3.1–10–5(b) applies to ineligibility to hold elective office, not ineligibility to run for elected office. Therefore, according to Cinkus, the arrearage did not render him ineligible to be a candidate for office and section 3.1–10–5(b) was not a basis to strike his nomination papers and exclude his name from the ballot. Cinkus argues that he was eligible to be a candidate on the ballot as long as he paid the arrearage prior to taking office. In support of the Board's decision, Esposito argues that section 3.1–10–5(b) applies to ineligibility to run for office. According to Esposito, the Board correctly decided that Cinkus was "not eligible to be a candidate" for the office of Stickney village trustee due to his being in arrears of a debt owed to the village at the time Cinkus filed his nomination papers.

Section 3.1–10–5 of the Municipal Code, captioned "Qualifications; elective office," provides as follows:

> "(a) A person is not eligible for an elective municipal office unless that person is a qualified elector of the municipality and has resided in the municipality at least one year next preceding the election.

(b) A person is not eligible for an elective municipal office if that person is in arrears in the payment of a tax or other indebtedness due to the municipality or has been convicted in any court located in the United States of any infamous crime, bribery, perjury, or other felony.

(c) A person is not eligible for the office of alderman of a ward unless that person has resided in the ward that the person seeks to represent, and a person is not eligible for the office of trustee of a district unless that person has resided in the municipality, at least one year next preceding the election or appointment, except as provided in subsection (c) of Section 3.1–20–25, subsection (b) of Section 3.1–25–75, Section 5–2–2, or Section 5–2–1." 65 ILCS 5/3.1–10–5 (West 2006).

Article 3.1 was added to the Illinois Municipal Code by Public Act 87–1119, which collected and recodified several predecessor provisions. Pub. Act 87–1119, eff. May 13, 1993 (adding 65 ILCS 5/3.1–5–5 *et seq.* (West 2006)). Compare 65 ILCS 5/3.1–10–5 (West 2006) with 65 ILCS 5/3–4–15, 3–14–1, 5–2–10 (West 1992).

The controlling principles are familiar. The primary rule of statutory construction is to ascertain and give effect to the intention of the legislature. The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. The statute should be evaluated as a whole, with each provision construed in connection with every other section. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997); *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 91 (1992). When the statutory language is clear, no resort is necessary to other tools of construction. *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996); *Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 216-17 (1994). Where the meaning of a statute is ambiguous, courts may look beyond the statutory language and consider the purpose of the law, the evils it was intended to remedy, and the legislative history of the statute. *Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 524 (2002); see *Advincula v. United Blood Services*, 176 Ill. 2d 1, 16-19 (1996).

The parties disagree on what the legislature meant when it used the word "eligible" in section 3.1–10–5(b). Cinkus and Esposito each

cite the section's plain language in support of their respective positions. Cinkus argues that the section "says nothing about eligibility *to run for office*, or that an individual may not file nominating papers to appear on the ballot. Thus, the plain language which the legislature has used concerns only *the holding of office*, not the running for office." (Emphasis in original.) In support of the Board's decision, Esposito cites to a dictionary definition of eligible as "fit to be chosen." He posits that a candidate may be chosen for an elective office through the filing of nomination papers, running for office, and being chosen by the voters. Esposito reasons: "Accordingly, when the express provisions of §3.1–10–5 speak of a person's eligibility for an elective office, the language clearly compels a connotation to disqualify those who are unqualified to run for office; a candidate unfit to be chosen by the electors." As Cinkus failed to satisfy the arrearage by the time he filed his nomination papers, Esposito concludes that the Board correctly ruled that Cinkus was ineligible to run for office pursuant to section 3.1–10–5(b).

If we were to construe the word "eligible" in isolation, we obviously would be forced to conclude that the word is ambiguous in that it relates to being elected to office as well as being capable of holding office. A standard dictionary defines the word "eligible" as both "fitted or qualified to be chosen," as in candidacy, and as "entitled to something," as in holding office. Webster's Third New International Dictionary 736 (1993). Another dictionary sets forth both meanings more simply: "Fit and proper to be selected ***; legally qualified for an office." Black's Law Dictionary 559 (8th ed. 2004); accord Black's Law Dictionary 612 (4th rev. ed. 1968) (defining "eligible" as being fit to be chosen, or capable of being chosen; and as being legally qualified to serve, or capable of serving and holding office).

In the event of this conclusion, Cinkus and Esposito suggest that we construe section 3.1–10–5 of the Illinois Municipal Code *in pari materia* with section 10–5 of the Election Code (10 ILCS 5/10–5 (West 2006)). The suggestion is well taken. Section 3.1–10–10 of the Illinois Municipal Code expressly provides: "The general election law applies to the scheduling, *manner of conducting*, voting at, and contesting of municipal elections." (Emphasis added.) 65 ILCS 5/3.1–10–10 (West 2006). A court presumes that the legislature

intended that two or more statutes which relate to the same subject are to be operative and harmonious. A court must compare statutes relating to the same subject and construe them with reference to each other, so as to give effect to all of the provisions of each if possible. *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 458-59 (2002); *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002); *Ashton v. County of Cook*, 384 Ill. 287, 298 (1943). This court has held that provisions of the Election Code and of the Illinois Municipal Code may be considered *in pari materia* for purposes of statutory construction. *United Citizens of Chicago & Illinois v. Coalition to Let the People Decide in 1989*, 125 Ill. 2d 332, 338-39 (1988).

Section 10–5 of the Election Code prescribes the content of a candidate's nomination papers. Among the various requirements, nomination papers

> "must include a statement of candidacy ***. Each such statement shall set out the address of such candidate, the office for which he is a candidate, shall state that the candidate *is* qualified for the office specified and has filed (or will file before the close of the petition filing period) a statement of economic interests as required by the Illinois Governmental Ethics Act, shall request that the candidate's name be placed upon the official ballot and shall be subscribed and sworn to by such candidate *** and may be in substantially the following form:
>
> * * *
>
> I, . . . . , being first duly sworn, say that I reside at . . . . street, in the city (or village) of . . . . , in the county of . . . . , State of Illinois; and that I am a qualified voter therein; that I am a candidate for election to the office of . . . . to be voted upon at the election to be held on the . . . . day of . . . . , . . . . ; and that I *am* legally qualified to hold such office ***." (Emphases added.) 10 ILCS 5/10–5 (West 2006).

This statement of candidacy and accompanying oath are mandatory requirements. See *Serwinski*, 156 Ill. App. 3d at 259-61.

The plain language of section 10–5 of the Election Code supports Esposito's position that section 3.1–10–5(b) refers to ineligibility to

run for office. The statement of candidacy and accompanying oath are phrased in the present tense. Thus, when a candidate submits his or her nomination papers to run for office, the candidate swears that he or she is–not will be–qualified for the office sought. In other words, the candidate is eligible to run for office and not merely to hold office. Accordingly, reading these two statutes together, the disqualifications provided by section 3.1–10–5(b) of the Illinois Municipal Code render a candidate ineligible to run for office if not remedied by the time the candidate files his or her nomination papers. See *Schumann v. Fleming*, 261 Ill. App. 3d 1062, 1066 (1994).

We note Cinkus' argument that section 10–5 of the Election Code actually supports his position that section 3.1–10–5(b) of the Illinois Municipal Code refers only to ineligibility to hold office. Cinkus points to that portion of the candidacy oath that identifies the sought-after office "to be voted upon" at a specified future date. 10 ILCS 5/10–5 (West 2006). According to Cinkus, the candidacy oath refers to being qualified to hold the identified office on that future date and not when the candidate submits nomination papers.

The plain language of section 10–5 of the Election Code refutes Cinkus' argument. The statutory language, which we earlier quoted and emphasized, is phrased in the present tense. If the legislature intended to speak of future events or contingencies it would have expressly done so, as it expressly prescribed the requirement of filing a statement of economic interests. 10 ILCS 5/10–5 (West 2006) (providing that statement of candidacy "shall state that the candidate *** has filed (or will file before the close of the petition filing period) a statement of economic interests").

We also note that the appellate court relied on *Bryant v. Board of Election Commissioners*, 224 Ill. 2d 473 (2007), and *Delgado v. Board of Election Commissioners*, 224 Ill. 2d 481 (2007), in support of its conclusion that being in arrears of a debt owed to a municipality precludes eligibility to run for municipal office. 373 Ill. App. 3d at 869-70. However, *Bryant* and *Delgado* were supervisory orders issued by this court. As a general rule, this court will issue a supervisory order only when the normal appellate process will not afford adequate relief and the dispute involves a matter important to the administration of justice, or intervention is necessary to keep an inferior tribunal from acting beyond the scope of its authority. *People*

*ex rel. Birkett v. Bakalis*, 196 Ill. 2d 510, 513 (2001). We have repeatedly noted that supreme court supervisory orders are nonprecedential. *People v. Phillips*, 217 Ill. 2d 270, 280 (2005); *People v. Durr*, 215 Ill. 2d 283, 295 (2005); see *Scheidler v. Cook County Officers Electoral Board*, 276 Ill. App. 3d 297, 302 (1995) (recognizing that supreme court supervisory order "could not be cited as precedential as to the merits").

Also, Cinkus relies on *People v. Hamilton*, 24 Ill. App. 609 (1887). According to Cinkus, *Hamilton* held that the arrearage provision of a statutory predecessor to section 3.1–10–5(b) prescribed disqualification as to the office and not the election. Cinkus argues that the appellate court in *Hamilton* allowed the candidate to pay his arrearage subsequent to the election and prior to his assumption of office. We agree with the appellate court that *Hamilton* is not persuasive because: (1) it was decided prior to 1935 and, consequently, has no precedential value (see *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 95 (1996); *Basham v. Hunt*, 332 Ill. App. 3d 980, 992 n.3 (2002)); (2) *Hamilton* was not an election case, and could not consider the current election scheme, which is very different from that in 1887; and (3) the predecessor statute in 1887 was different from section 3.1–10–5(b). 373 Ill. App. 3d at 870.

In contrast to *Hamilton*, we consider *Cahnmann v. Eckerty*, 40 Ill. App. 3d 180 (1976), to be exemplary. In that case, the electoral board declared the candidate ineligible to run for office because he did not meet the one-year residency requirement of a statutory predecessor to section 3.1–10–5. The circuit court confirmed the board's decision, and the appellate court affirmed. In addressing the candidate's equal protection challenge, the court repeatedly described the affected right not as the right to hold office, but as "the right to candidacy." *Cahnmann*, 40 Ill. App. 3d at 181.

We confirm the Board's decision. We hold that, pursuant to section 3.1–10–5(b) of the Illinois Municipal Code, read in conjunction with section 10–5 of the Election Code, Cinkus was not eligible to run for trustee in the Village of Stickney because he was in arrears of a debt owed to the village at the time he filed his nomination papers.

## III. CONCLUSION

For the foregoing reasons, the judgment of the appellate court, which confirmed the decision of the Village of Stickney Municipal Officers Electoral Board, is affirmed.

*Affirmed.*