Filed January 12, 2010 CORRECTED 1/28/10

3--08--0561

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| MINOOKA COMMUNITY HIGH SCHOOL DISTRICT NO. 111 and MINOOKA COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 201, | ) ) ) ) ) | Petition for Review of the Order of the Property Tax Appeal Board<br><br>Docket No.<br>04-00860.001-I-3 |
| Petitioners, | ) ) ) | |
| v. | ) ) | |
| THE ILLINOIS PROPERTY TAX APPEAL BOARD, CARLOS X. MONTOYA, in His Official Capacity as Chairman of the Illinois Property Tax Appeal Board, AUX SABLE LIQUID PRODUCTS, L.P., and GRUNDY COUNTY BOARD of REVIEW, | ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) ) | |

JUSTICE O'BRIEN delivered the opinion of the court:

Petitioners Minooka Community High School District No. 111 and Minooka Community

Consolidated School District No. 201 (collectively the School Districts) appeal a ruling of the

Illinois Property Tax Appeal Board (PTAB), in which PTAB allowed Aux Sable to take a voluntary

dismissal of its appeal of the Grundy County Board of Review's (Board of Review) tax assessment

of Aux Sable's property for the year 2004, after the School Districts had successfully intervened in

the proceedings and were in the process of obtaining their own valuation of the property. We reverse

the decision of PTAB and remand the cause for further proceedings.

FACTS

This case is part of a series of appeals involving the Board of Review's yearly assessments of the tax value of Aux Sable's natural gas extraction facility, which is located in Grundy County, Illinois. This case, like the others, began with Aux Sable appealing the Board of Review's tax assessment valuation of its natural gas extraction facility, which came into being in Grundy County pursuant to a tax increment financing agreement between Aux Sable and the School Districts and other taxing districts in Grundy County. In this particular case, the Board of Review's final decision of the valuation for the property for the year 2004 was issued on February 11, 2005. On March 10, 2005, Aux Sable filed an appeal with PTAB seeking review of the Board of Review's 2004 tax assessment valuation. The School Districts did not attempt to file an appeal with PTAB, although, theoretically, they had the right to do so. Under the Property Tax Code (Tax Code) (35 ILCS 200/16-160 (West 2004)) and PTAB rules (the Illinois Administrative Code) promulgated pursuant to the Code, "[a]ny taxing body that has a revenue interest in a decision of the board of review may file an appeal by filing its petition within 30 days after the postmark date of the written notice to the taxpayer of a decision by the board of review." 86 Ill. Adm. Code §1910.60(b), as amended by 31 Ill. Reg. 16235 (eff. November 26, 2007).[1] It is the School Districts' position that any attempt to file a separate appeal is futile because of PTAB's unwritten policy of accepting only one appeal for the same year for the same property and requiring that any subsequent "appellants" move to intervene instead. Neither Aux Sable nor PTAB disputes that this is PTAB's unwritten policy. After receiving

_____

[1]Citations to the Illinois Administrative Code include amendments with the most recent effective dates. The sections cited to are substantially the same in relevant part to the regulations in effect at the time this action was initiated.

three extensions of time from PTAB, Aux Sable filed its evidence, and PTAB notified the Board of Review of the appeal. On February 21, 2006, the School Districts filed a request to intervene and one of several subsequent motions for an extension of time to file their evidence.

The School Districts filed their request to intervene under section 1910.60(d)(1) of Title 86 of the Illinois Administrative Code, which states, in part, that "[a]ny taxing body that has a revenue interest in an appeal before the [PTAB] may become an intervening party by filing in triplicate with the Clerk of the [PTAB] a Request to Intervene." 86 Ill. Adm. Code §1910.60(d)(1), as amended by 31 Ill. Reg. 16235, (eff. November 26, 2007). As pointed out by the School Districts, the right to intervene is triggered only after PTAB has notified the State's Attorney of the filing of an appeal or the Board of Review, as required in Section 16-180 of the Property Tax Code (35 ILCS 200/16-180 (West 2004)), has served a copy of the petition to appeal on the taxing districts. 86 Ill. Adm. Code §1910.60(d) as amended by 31 Ill. Reg. 16235-36 (eff. November 27, 2007). However, under section 1910.30(l) of Title 86 of the Illinois Administrative Code, the clerk of PTAB shall send out notices, including to the Board of Review, "[u]pon receipt of a completed petition [of appeal], including the written and documentary evidence from the contesting party." 86 Ill. Adm. Code §1910.30(l) as amended at 31 Ill. Reg. 16231 (eff. November 26, 2007). It follows, in practice, that although PTAB allows a taxing body to intervene by statutory right, the time for intervening is contrived by PTAB regulations as scheduled to occur only after the party appealing the tax has submitted its written and documentary evidence. The School Districts became intervening parties on March 3, 2006.

Following their move to intervene, the School Districts requested several motions for extensions of time to submit their evidence and also continued to be involved in Aux Sable's appeal

of the Board of Review's 2003 tax valuation assessment, in which the School Districts had also intervened. Pursuant to these appeals, Aux Sable and the School Districts engaged in mutual pre-hearing activities. In one document of record in the case before us, the School Districts, in a reply to Aux Sable's response to the School Districts' request for an extension of time to file evidence, make note of a request from Aux Sable to PTAB that it be allowed to withhold the filing of evidence in its 2005 appeal until 90 days after the 2004 case is concluded. In arguing for the delay, Aux Sable states in its letter that "[m]any of the issues in the 2003 and 2004 cases–including the question of what items are assessable real property and what are non-assessable property–will influence the preparation of evidence for 2005." On April 1, 2008, PTAB granted an "Agreed Motion For Extension to File Evidence Beyond Final Date of May 28, 2008," wherein the School Districts asserted, and Aux Sable did not dispute, that because a delay in inspecting Aux Sable's property for purposes of an appraisal by the School Districts' appraiser was due to Aux Sable's inability to accommodate the School Districts, the parties had agreed Aux Sable would not hold the School Districts to the then-current May 28, 2008, evidence filing deadline.

On April 16, 2008, PTAB received from Aux Sable a motion to voluntarily dismiss its appeal. Also on April 16, 2008, PTAB granted the School Districts a "FINAL-FINAL" extension to August 26, 2008, to file their evidence. The School Districts filed a response to Aux Sable's motion to dismiss on May 5, 2008, arguing, in part, that expenditures and efforts to date that included the work on all the appeals involving the same parties and property were compelling circumstances that supported a finding on PTAB's part that compelling or extreme circumstances militated against a ruling granting Aux Sable's motion to dismiss. The School Districts' argument was a reference to section 1910.50(j) of Title 86 of the Illinois Administrative Code, which provides:

4

"j) The contesting party may, at any time before the hearing begins, move to withdraw or voluntarily dismiss the appeal, by written request filed with the Board and all other parties to the appeal. Motions to withdraw or voluntarily dismiss an appeal are favored by the Board and will be denied only in the most extreme or compelling circumstances."86 Ill. Adm. Code §1910.50(j), as amended at 31 Ill. Reg. 16234 (eff. November 26, 2007).

In their motion in opposition, the School Districts also stated, in part:

"The School Districts have already expended over $70,000 in attorney fees and $57,000 in appraisal fees on all of the Aux Sable appeals to date. The School Districts are currently preparing to go to hearing in the 2003 appeal in which substantial expert and attorney fees are being incurred. In this 2004 appeal, the School Districts authorized an additional $50,000 to $57,500 in appraisal fees. The appraisers have continued to work on the 2004 report for which they will be entitled to be paid regardless of whether this 2004 appeal is dismissed. *** Now that the pre-hearing motions have been resolved and our appraiser is on the cusp of completing his 2004 appraisal, but for the inspection, Aux Sable's only response to our requests to set the agreed upon inspection is to file its Motion to Dismiss. *** A dismissal of this 2004 appeal, however, would be very prejudicial to the School Districts because it would also dismiss the School

5

Districts' counterclaim, thereby not allowing the School Districts the opportunity to recoup the substantial dollars in public funds they have committed to these appeals filed by Aux Sable or recover the tax dollars to which it would be entitled if the assessment is increased."

In a letter dated June 19, 2008, PTAB granted Aux Sable's motion and dismissed the appeal. In granting Aux Sable's motion, PTAB stated, "[i]n accordance with your withdrawal request, we have dismissed the above referenced appeal(s)." The School Districts follow with this appeal.

ANALYSIS

We review an agency's application of the law to a given set of facts under a clearly erroneous standard. See *Perez v. Illinois Department of Children & Family Services*, 384 Ill. App. 3d 770, 775-76, 894 N.E.2d 447, 452 (2008) (mixed questions of fact and law are reviewed under the clearly erroneous standard of review). An administrative agency's decision is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211-12, 886 N.E.2d 1011, 1018 (2008).

In the instant case, PTAB has provided no factual basis for its decision to allow Aux Sable's motion to dismiss. We are persuaded by the School Districts' assertion that because these PTAB appeals involve the same parties, the same property, and the same issue, it is appropriate, in determining whether to allow Aux Sable to voluntarily dismiss the 2004 appeal, to view the School Districts' expenditures and efforts on the appeals in the aggregate. Aux Sable admitted as much when, in arguing to PTAB for a delay in the presentation of its 2005 appeal evidence, it asserted that "[m]any of the issues in the 2003 and 2004 cases– including the question of what items are

6

assessable real property and what are non-assessable property–will influence the preparation of evidence for 2005." We believe these expenditures and efforts on the part of the School Districts should not simply be ignored when considering whether to allow Aux Sable a voluntary dismissal, a dismissal which in effect terminates any right on the part of the School Districts to further pursue the action, although they have a statutory right to participate. In this appeal alone, the School Districts became intervening parties on March 6, 2006. Before the appeal was dismissed on June 19, 2008, the School Districts engaged in activity pursuant to the appeal that should be recognized by PTAB. We are unpersuaded by PTAB's assertion that the School Districts' efforts should be discounted as dilatory. Our examination of the record indicates both parties to the proceedings received numerous extensions of time to file evidence and it is undisputed that some of the delay in the School Districts' efforts to appraise the property are attributable to Aux Sable.

We also note that on April 16, 2008, the same day Aux Sable filed for a voluntary dismissal, PTAB granted the School Districts an extension to file their evidence to August 26, 2008. Nevertheless, on June 19, 2008, before the deadline for the School Districts' evidence, PTAB, without any finding of fact, granted Aux Sable's motion and dismissed the appeal. Under section 16-185 of the Tax Code, PTAB is charged with "mak[ing] a decision in each appeal or case appealed to it *** based upon equity and the weight of evidence." 35 ILCS 200/16-185 (West 2004). Furthermore, PTAB's own rules charge the Board with determining "the correct assessment *** of any parcel of real property which is the subject of an appeal, based upon facts, evidence, exhibits and briefs submitted to or elicited by the Board." 86 Ill. Adm. Code §1910.10(b), as amended at 21 Ill. Reg. 3706 (eff. March 6, 1997).

In our minds, a decision based on equity and the weight of the evidence cannot be had

7

absent the evidence that an intervenor of right seeks to submit. We are left with a definite and firm conviction that PTAB made a mistake in dismissing Aux Sable's appeal without giving the School Districts an opportunity to present their substantive evidence. In this case, we consider the efforts and expenditures on the part of the School Districts to gather the evidence supporting their claim, together with PTAB's own rule giving taxing bodies the right to intervene, represent extreme and compelling circumstances sufficient to preclude Aux Sable from taking a voluntary dismissal of its appeal.

Although we recognize that in the instant case, the School Districts did not move, as did Aux Sable, to appeal the Board of Review's final decision, we find troubling the undisputed fact that the manner in which PTAB handles the appeal process can result in the effective nullification of a potential appellant's right to appeal a Board of Review decision. As a result of PTAB's unwritten policy of accepting only one appeal for the same year for the same property, a subsequent appellant is left with a right only to intervene, and, as witnessed in the instant case, if the right to intervene is thwarted by the voluntary dismissal of the tax appellant, the intervenor is left with no recourse under which to pursue a claim.

We recognize that the Illinois Code of Civil Procedure (735 ILCS 5/2-101 *et. seq.* (West 2004)) is not applicable to administrative proceedings and that an administrative review does not require a proceeding in the nature of a judicial proceeding; however, an administrative procedure must be by a form that is suitable and proper to the nature of the determination to be made and must conform to fundamental principles of justice. *Desai v. Metropolitan Sanitary District of Greater Chicago*, 125 Ill. App. 3d 1031, 1033, 466 N.E.2d 1045, 1047 (1984); *Village of South Elgin v. Waste Management of Illinois, Inc.*, 64 Ill. App. 3d 565, 567-68, 381 N.E.2d 778, 780 (1978). As

8

we have noted above, under the Tax Code and the Illinois Administrative Code, "any taxing body that has a [revenue] interest in a decision of the board of review may file an appeal." 35 ILCS 200/16-160 (West 2004); 86 Ill. Adm. Code §1910.60(b), as amended by 31 Ill. Reg. 16235, (eff. November 26, 2007). Furthermore, the Tax Code also charges PTAB with "mak[ing] a decision in each appeal or case appealed to it *** based upon equity and the weight of evidence." 35 ILCS 200/16-185 (West 2004). PTAB has a responsibility to formulate procedures that are suitable to the decisions it makes and that conform to fundamental principles of justice. An unwritten rule that allows only one appeal for the same year for the same property, and a written rule that allows for a right to intervene which can easily be abrogated, do not comport with fundamental principles of justice.

For the foregoing reasons, the ruling of the Property Tax Appeal Board is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

LYTTON, J., concurs.

JUSTICE SCHMIDT, dissenting:

I disagree with the majority's conclusion that the Illinois Property Tax Appeal Board's (the PTAB) order dismissing Aux Sable's property tax appeal was clearly erroneous.

The majority states that the PTAB "has provided no factual basis for its decision to allow Aux Sable's motion to dismiss." (Emphasis added.) Slip op. at 6. Title 86, section 1910.50(j) of the Administrative Code states:

"j) The contesting party may, at any

time before the hearing begins, move to

9

withdraw or voluntarily dismiss the appeal, by written request filed with the Board and all other parties to the appeal. Motions to withdraw or voluntarily dismiss an appeal are favored by the Board and will be denied only in the most extreme or compelling circumstances." 86 Ill. Adm. Code §1910.50(j), as amended at 31 Ill. Reg. 16222 (eff. November 26, 2007).

Is not Aux Sable's motion to voluntarily dismiss its own appeal, coupled with the Administrative Code's pronouncement that motions to voluntarily dismiss an appeal are favored, at least <u>some</u> basis for the PTAB's decision? While the majority mentions section 1910.50(j) in the facts section of its opinion, it totally ignores the rule's existence in its analysis and instead chooses to focus on an "unwritten policy." Slip op. at 8.

What cannot be ignored is that the school district was well aware of its rights under the Tax Code and Administrative Code to appeal the valuation of Aux Sable's property. 35 ILCS 200/16--160 (West 2004); 86 Ill. Adm. Code §1910.60(b) (2004). It admittedly chose not to file an appeal regarding the valuation of Aux Sable's property. It argues that the PTAB would have refused to recognize its appeal.

At oral argument, the school district's counsel acknowledged that had Aux Sable never appealed the valuation of the property, "there would be no case." Counsel further agreed that the school district would be "right where the PTAB put [it]" but for Aux Sable's appeal. That is, in

10

a position where it must accept the original valuation of the property.

The school district had a statutory right to file its own appeal of the valuation. It did not do so. We do not know what the PTAB would have done had the appeal been filed. The school district's argument is essentially: Had we filed an appeal, the PTAB would have committed reversible error by failing to acknowledge our appeal.

The school district did not file an appeal. It was not error to grant Aux Sable's motion to voluntarily dismiss its own appeal, the sole appeal pending.

We cannot reverse for error that never occurred. I would affirm.