2021 IL App (1st) 190515-U

FIFTH DIVISION
September 17, 2021

No. 1-19-0515

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| MAKHAN S. CLAIR, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | 17 CH 16542 |
| | ) | |
| VILLAGE OF HANOVER PARK, | ) | Honorable Martin C. Kelley, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |

_____

JUSTICE CONNORS delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

*Held:* The Administrative Officer of the Village of Hanover Park's finding that plaintiff violated Village Ordinance 10.42.5(g) for failing to affix a video gaming sticker on two video gaming terminals located in his place of business was not clearly erroneous.

¶ 1     Plaintiff, Makhan S. Clair, appeals from an order of the circuit court affirming an adverse final decision by defendant, the Village of Hanover Park (Village), fining him for violating section 10-42.5(g) of the Hanover Park Code of Ordinances, which provides: "It is unlawful to operate a video gaming terminal in the village without paying the tax and having a valid video gaming tax sticker affixed thereon." For the following reasons, we affirm.

¶ 2      On May 25, 2017, Hanover Park police officer Thomas Langhenry issued plaintiff an ordinance citation for unlawfully operating a video gaming terminal in the Village without having a valid video gaming sticker applied thereon. Plaintiff was also cited for violating Village Ordinance 10-42.5(b), which states: "Only premises licensed to sell alcoholic liquor as Class AX, Class CX, DX, and Class EX are authorized to operate video gaming terminals and only when licensed by the Illinois Gaming Board pursuant to the provisions in the Illinois Gaming Act, 230 ILCS 40/1 *et seq.* and in accordance with this section."

¶ 3      An administrative hearing officer heard the case on November 8 and 21, 2017. The record shows there was an audio recording of the hearing, but the audio disc is not contained in the record.[1]

¶ 4      Plaintiff's arrest report was presented at the hearing and showed that, on the day of the incident, Officer Langhenry observed two kiosk gaming terminals located just to the right of the entrance of the north side of the business. They were free-standing with a touch screen monitor. They did not have any state or Village gaming tax stickers attached. Officer Langhenry asked the on-duty clerk, Jatinder Clair, to show him how to play the video game at one of the terminals. Jatinder told him to insert money into the machine and purchase a promotional coupon. He could then use the credits given to play. The officer inserted a dollar bill into the machine and was given 100 promotional credits. The officer randomly selected a casino-style game from a list of many on the video screen. He was able to use different credit amounts on each play. Wins were determined by the machine and were recorded as promotional wins. The officer played several times, using three credits each time. The terminal indicated wins and he accumulated $1.76 in

_____

[1] Upon careful review of the record, we can find several references to "audiotapes" of testimony that was given on November 8, 2017, and November 21, 2017, but there are no transcripts or physical copies of the discs from those hearing dates located in the record on appeal.

promotional wins. The game did not rely on any skill and was purely a game of chance. The officer advised Jatinder he wanted to cash out and collect his winnings. She instructed him to print out the promotional prize receipt and give it to her and she would pay him from the cash register. The officer presented Jatinder the promotional wins receipt and she gave him $1.76 in return.

¶ 5    Plaintiff, who was also present, told the officer that he obtained the machines from a company named Ficus Promotional Kiosk, and that a person identified as Robert Wax came to his business approximately four weeks prior and delivered the machines. Wax told plaintiff that gaming machines do not require a license or approval from the Village. Wax also told plaintiff that he would return every couple of weeks, collect the coupons, and then reimburse plaintiff for the money plaintiff paid out to customers. Plaintiff would receive a commission of the profits from Wax.

¶ 6    According to the police report, the officer then contacted Wax, who denied owning the gaming terminals or being the owner of Ficus Promotional. He referred the officer to corporate legal counsel to answer any further questions.

¶ 7    Prior to the Village administrative hearing, plaintiff filed a motion to dismiss the two citations for violating Village ordinances. He argued that the kiosks in question allowed patrons to purchase a product discount coupon, and at the same time, the patron was entered into a sweepstakes with the possibility of winning cash or prizes. However, the kiosks also had a button that said, "Free Play," which allowed patrons to enter the sweepstakes without paying to participate. The officer who visited the business on the date in question only followed one option. Plaintiff argued that the kiosks were not "gambling machines" because users were not required to pay or make a purchase to participate.

¶ 8     In support of his position, plaintiff relied on section 28-1(b)(13) of the Code of Criminal Procedure (Code) (720 ILCS 5/2801(b)(12) (West 2018)), which states that participants in games of skill or chance where money or other things of value can be won but no payment or purchase is required to participate, will not be convicted of gambling. Plaintiff also relied on *People v. Mercado*, 15 CM 377, a case from the circuit court of DuPage County, in which a business owner, who had a machine similar to plaintiff's kiosks in his place of business, was found not to have violated the Code because the machine fell into the exception listed in section 28-1(b)(13) of the Code (720 ILCS 5/28-1(b)(13) (West 2018)).

¶ 9     The Village responded that a gambling license had never been issued to plaintiff and plaintiff had never applied for a video gaming tax sticker. It further argued that there was no mention in the police report that the machine could be played for free, and that it is considered gambling when a person deposits money and gets money back after winning. The Village noted that *People v. Mercado*, 15 CM 377, was a local criminal decision in the circuit court of DuPage County, and it had no precedential value in the matter. The Village stated that the operation of these machines was not what the legislature intended as an exception under section 28-1(b)(13) of the Code (720 ILCS 5/28-1(b)(13) (West 2018)).

¶ 10    The administrative hearing officer, Victor Puscas, issued an order dated November 22, 2017, finding plaintiff violated Village Ordinance 10-42.5(g) by "unlawfully operating a video gaming terminal in the Village without paying the tax and having a valid video gaming tax sticker affixed thereon." The total judgment cost was $600, plus $100 in court fees. Plaintiff was found "not liable" of violating Village Ordinance 10-42.5(b), making it unlawful to allow gambling on a premises licensed to sell alcoholic beverages without a Class X license.

4

¶ 11    On December 15, 2017, plaintiff filed a complaint for administrative review pursuant to the Illinois Administrative Review Act (737 ILCS 5/3-101 *et seq*. (West 2018)) in the circuit court of Cook County. Plaintiff sought judicial review of the citation for violating Village Ordinance 10-42.5(g), arguing that the administrative order was "clearly erroneous and contrary to the evidence presented."

¶ 12    In the Village's response to plaintiff's complaint for administrative review, it stated that the kiosks in question were video gaming terminals within the meaning of the village ordinance. The Illinois Video Gaming Act defines a video gaming terminal as:

> "any electronic video game machine that, upon insertion of cash, electronic cards, or vouchers, or any combination thereof, is available to play or simulate the play of a video game, including but not limited to video poker, line up, and black jack, as authorized by the [Illinois Gaming] Board utilizing a video display and microprocessors in which the player may receive free games or credits that can be redeemed for cash. This term does not include a machine that directly dispenses coins, cash or tokens or is for amusement purposes only." 230 ILCS 40/5 (West 2018)

¶ 13    The Village argued that because the kiosks in question operated by cash insertion and were redeemable for cash coupon, they were video gaming terminals and therefore required a Village video gaming tax sticker. A plain reading of the Village Ordinance in question showed that plaintiff violated the ordinance by failing to apply for a video gaming sticker.

¶ 14    On September 28, 2018, the circuit court affirmed the decision of the administrative hearing officer, finding that the kiosks were video gaming terminals subject to the Village ordinance.

¶ 15    Plaintiff filed a motion to reconsider, arguing that the kiosks were not "illegal gambling devices," and that section 28-1(b)(13) of the Code specifically exempts games of skill or chance where money or other things of value can be won but no payment or purchase is required to participate "from the definition of gambling." Plaintiff argued that the machines were not "video gambling terminals."

¶ 16    In response, the Village noted that while the kiosk operates in both a free mode and a cash payment mode, it was required to pay a gaming tax on the kiosk since it had a mode for cash payment. The Village argued that if plaintiff did not want to pay the tax, it could disable the cash payment option and allow the kiosk to operate in "free mode" only. The Village argued that as they currently operate, the kiosks qualify under the Video Gaming Act as a video gaming terminal.

¶ 17    On January 11, 2019, a hearing was held on plaintiff's motion to reconsider. The trial court noted that it had to determine whether the kiosks were "defined under the Video Gaming Act, thereby making [them] subject to the Village sticker, or is it the statutory exemption provided." After hearing arguments, the court ultimately found that the fact that the kiosks had a legal non-gaming mode "does not change the essence or character of the gaming mode operation requiring money to proceed to obtain discount coupons and a sweepstake entry." The court agreed with the Village that the kiosks did not qualify for the exemption provided in section 28-1(b)(13) of the Code (720 ILCS 5/28-1(b)(13) (West 2018)), which exempted games of skill or chance where money or other things of value can be won but no payment or purchase is required to participate, from the definition of gambling. The court found that the kiosk was a video gaming terminal under the Video Gaming Act and that it required a Village sticker. The motion to reconsider was denied.

¶ 18    On appeal, plaintiff contends that that the trial court incorrectly interpreted section 28-1

of the Code and the kiosks are specifically exempted from the definition of "gambling" because

they "did not require any payment or purchase in order to participate in the Sweepstakes" in free

play mode. The Village has not filed a responsive appellee brief. This court, however, has

elected to consider this appeal on plaintiff's brief alone under the principles set forth the in *First

Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131-33 (1976).

¶ 19    As an initial matter, we note that when reviewing administrative matters, we review the

decision of the administrative agency and not the judgment of the circuit court. *Rose v. Board of

Trustees of Mount Prospect Police Pension Fund*, 2011 IL App. (1st) 102157, ¶ 1. Accordingly,

the circuit court's interpretation of section 28-1 of the Code is irrelevant for purposes of this

appeal.

¶ 20    Our standard of review of each issue depends upon the type of question presented. *Cinkus

v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). An

administrative agency's factual determinations are deemed *prima facie* true and correct. *Id.* We

are limited to reviewing those findings and conclusions to ascertain whether they are against the

manifest weight of the evidence. *Id.* When presented with an administrative agency's

conclusions on pure questions of law, we give no deference to those determinations and review

them *de novo*. *Id.* When reviewing mixed questions of fact and law, we apply the clearly

erroneous standard of review, which lies between the manifest weight of the evidence standard

and a *de novo* standard. *AFM Messenger Service, Inc. v. Department of Employment Security*,

198 Ill. 2d 380, 392 (2001). Mixed questions are those in which the historical facts are admitted

or established, the rule of law is undisputed, and the question is whether those facts satisfy the

legal standard. *Cinkus*, 228 Ill. 2d at 211. An agency's decision is clearly erroneous when we are left with a definite and firm conviction that a mistake has been made. *Id.*

¶ 21 The administrative agency is responsible for determining the credibility of the witnesses, weighing the evidence, and drawing reasonable inferences from that evidence. *Aich v. City of Chicago*, 2013 IL App (1st) 120987, ¶ 18. When reviewing an agency's factual findings, this court will not reweigh the evidence or substitute its judgment for that of the agency. *Cinkus*, 228 Ill. 2d at 210. The burden of proof is on the plaintiff seeking administrative review. *Shachter v. City of Chicago*, 2016 IL App (1st) 150442, ¶ 22.

¶ 22 In this case, our review is frustrated by an incomplete record. An appellant has the burden of presenting a sufficiently complete record of the trial court proceedings to support claims of error. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Without a complete record, this court will not speculate as to errors that may have occurred below and will presume that the trial court's order conformed with the law and had a sufficient factual basis. *Id*. Any doubts arising from an incomplete record will be resolved against appellant. *Id*. This rule also applies in the context of an administrative review if the appellant fails to provide the necessary transcript from an administrative hearing. See *Burns v. Department of Insurance*, 2013 IL App (1st) 122449, ¶ 15.

¶ 23 Here, the record consists of the pleadings, the police reports, and the transcript of the hearing on plaintiff's motion to reconsider the circuit court's ruling affirming the administrative agency's order. The record does not contain a transcript or audio of the administrative hearings. Without those items, this court will not speculate as to what occurred before the administrative hearing officer. We therefore presume the administrative agency acted in conformity with law

and its evidentiary rulings had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 391-92; *Burns*, 2013 IL App (1st) 122449, ¶ 15.

¶ 24    Notwithstanding the incomplete record on appeal, we also conclude that plaintiff failed to meet his burden of proof to support his claim. Plaintiff's argument on appeal is that the kiosks in question were not subject to Village video gaming taxes and therefore did not need video gaming stickers.

¶ 25    Village Ordinance 10-42.5(g) states that "[i]t is unlawful to operate a video gaming terminal in the village without paying the tax and having a valid video gaming tax sticker affixed thereon." The Illinois Video Gaming Act defines a "video gaming terminal" as:

> "any electronic video game machine that, upon insertion of cash, electronic cards, vouchers, or any combination thereof, is available to play or simulate the play of a video game, including but not limited to video poker, line up, and blackjack, as authorized by the [Illinois Gaming] Board utilizing a video display and microprocessors in which the player may receive free games or credits that can be redeemed for cash. The term does not include a machine that directly dispenses coins, cash, or tokens or is for amusement purposes only." 230 ILCS 40/5 (West 2018).

¶ 26    The kiosks fall squarely into the definition of a video gaming terminal as defined by the Act. The arrest report indicated that the Officer Langhenry put $1 into the kiosk, which was an electronic video game machine, played a video game, and received credits in the amount of $1.76 that were immediately redeemable for cash. The Village hearing officer found that the kiosks were video gaming terminals as defined by the Act, and therefore plaintiff violated Village Ordinance 10-42.5(g) by failing to pay taxes and obtain video gaming stickers for the

kiosks. As stated above, the agency's factual findings and conclusions are held to be *prima facie* true and correct, and plaintiff has shown nothing in the record which would preclude such a conclusion.

¶ 27　We are unpersuaded by plaintiff's contention that possessing the kiosks are an exception to gambling under section 28-1(b)(13) of the Code because they have a "free play" mode. The free play mode does not negate the fact that a patron can insert money in the kiosks, play games of chance, and receive credits that are immediately redeemable for cash, making them video gaming terminals under the Act.

¶ 28　For the foregoing reasons, we affirm the judgment of the circuit court of Cook County affirming the decision of the Village of Hanover Park.

¶ 29　Affirmed.