NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240261-U

NO. 4-24-0261

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 30, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| EDWARD G. SOBCZYK, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| BOARD OF TRUSTEES OF THE ROCKFORD | ) | No. 23LA104 |
| FIREFIGHTERS' PENSION FUND and THE CITY OF | ) | |
| ROCKFORD, ILLINOIS, a Municipal Corporation, | ) | Honorable |
| Defendants-Appellees. | ) | Ronald Anthony Barch, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the decision of the Board of Trustees of the Rockford Firefighters' Pension Fund denying plaintiff's application for line-of-duty and occupational disease disability pension benefits was not against the manifest weight of the evidence.

¶ 2    Plaintiff, Edward G. Sobczyk, filed a petition for administrative review of a decision made by defendant, the Board of Trustees of the Rockford Firefighters' Pension Fund (Board) denying his application for line-of-duty and occupational disease disability pensions. The circuit court affirmed the Board's decision. Plaintiff appeals, contending the Board and the independent medical examiners (IMEs) failed to use "the proper legal causation standards in their determination of [his] case." We affirm.

¶ 3                                I. BACKGROUND

¶ 4         Plaintiff started working as a firefighter for defendant, the City of Rockford, in March 1995, eventually rising to the rank of captain. In April 2021, plaintiff noticed an enlarged lymph node on the left side of his neck that was biopsied and returned as a p16-positive squamous cell carcinoma with no primary cancer site. Plaintiff then underwent surgery, chemotherapy and radiation treatment, which he completed in August 2021. However, a follow-up medical scan showed plaintiff's cancer had metastasized and spread to other lymph nodes. Biopsies of those nodes confirmed a p16-positive squamous cell cancer, but further testing of those samples for the human papillomavirus (HPV) 16 and 18 genotypes returned negative results.

¶ 5         In January 2022, plaintiff filed an application for line-of-duty and occupational-disease disability pensions, citing his cancer diagnosis. Administrative hearings on plaintiff's application took place on four dates between July and December 2022. The relevant testimony is summarized below.

¶ 6         At the outset of the first day of proceedings, the hearing officer went over "the basic legal principles" related to occupational disability and line-of-duty pensions. Regarding the latter, the officer stated:

> "Line-of-duty pensions, which is the other type of disability benefit that [plaintiff] has requested the Board to consider, are given to those firefighters who are disabled as a result of an accident or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of acts of duty. And this is the definition from Section 4-110 of the Illinois Pension Code [(40 ILCS 5/4-110) (West 2022))].

I'll also note that evidence of a pre-existing injury or condition does not bar a line-of-duty disability. However, the line-of-duty disability must be causally related or resulting from duty."

When asked by the hearing officer if there was "anything additional that you would like to note about the legal principles at this point," plaintiff's counsel responded, "no," aside from making an opening statement.

¶ 7 During his testimony, plaintiff stated he was never a smoker. Over the course of his employment as a firefighter, plaintiff frequently responded to calls for emergency fire and medical services. He estimated the Rockford Fire Department responded to fires approximately "every 33 hours," and he was exposed to smoke, plastic fumes, asbestos, and other carcinogens almost daily. When responding to fires, plaintiff wore all the department-issued protective gear and a self-contained breathing apparatus. However, he routinely removed his gear when removing smoldering debris and occasionally wore an N95 mask when "there was too much dust or things like that."

¶ 8 The Board also received the reports and testimony of four doctors. Plaintiff called Dr. Peter Orris, a physician trained in occupational and internal medicine, as a retained expert. The other three doctors—Dr. Nicholas Campbell, Dr. Daniel Samo, and Dr. Elliot Lieberman—served as the Board's IMEs.

¶ 9 In his report, Dr. Orris noted plaintiff had been diagnosed with "p16 positive, HPV genotypes 16 and 18 negative, squamous cell carcinoma of unknown origin with recurrence in the mediastinum." Although "the origin of [plaintiff's] primary malignancy is unclear," Dr. Orris believed "it is highly likely that [plaintiff's] cancer is one covered" under the Pension Code, given plaintiff's exposure to various carcinogens over the course of his decades-long

employment as a firefighter. Therefore, Dr. Orris concluded "that the exposures as a firefighter over [plaintiff's] career was causative as a cause of his cancer." However, he noted that p16 positivity "is a characteristic that is frequently positive in HPV-induced cancers," but he opined plaintiff's cancer was not likely caused by HPV, "given the genotype 16 and 18 being negative."

¶ 10    Dr. Nicholas Campbell is a board-certified oncologist specializing in thoracic, head, and neck malignancies. Dr. Campbell ruled out plaintiff's firefighting duties as a contributing cause of plaintiff's cancer based on the type of cancer plaintiff had. According to Dr. Campbell, "p16 is a well-known and highly reproducible molecule for which pathologists routinely test head [and] neck cancers." Plaintiff's tumors tested "strongly positive for this molecule," and Dr. Campbell concluded plaintiff's cancer "was not caused by heat, radiation, or a known carcinogen that he would have been exposed to at work." Dr. Campbell explained, "p16 positivity, especially when diffusely positive on a specimen as [plaintiff's] samples were, is pathognomonic for a cancer caused by HPV. Other cancers that are not HPV related in the head [and] neck can rarely be seen to be p16 positive, but usually have a primary lesion that is found."

¶ 11    Dr. Campbell also explained why the negative results of plaintiff's metastasized samples for the HPV 16 and 18 genotypes did not change his opinion. According to Dr. Campbell, "when cancers spread and metastasize, they become more deranged" and "will oftentimes lose the HPV positivity." And because plaintiff's initial biopsy samples were diffusely positive for the p16 molecule, Dr. Campbell reasoned that "[t]his would be sort of the one tumor type to get that you can't really pin on anything else," other than HPV.

¶ 12    Dr. Samo is a physician specializing in occupational medicine. He did not believe plaintiff's cancer resulted from an act of duty, the cumulative effects of duty, or otherwise from plaintiff's service as a firefighter. In Dr. Samo's opinion, the negative test results of plaintiff's

metastasized biopsy samples did not "remove [HPV] as a cause" because there are "over 100 different HPV varieties," and the tested-for genotypes were "the two most common ones involved." Dr. Samo believed that "almost all" cancers could be caused by exposure to heat, radiation, or a known carcinogen as defined by the International Agency for Research on Cancer (IARC). However, Dr. Samo noted there was no agreement in the pertinent medical studies "on the association of head and neck *** cancer with firefighting," and "[n]othing in the literature talk[ed] about causation."

¶ 13　　　　Dr. Elliot Lieberman is board certified in otolaryngology, as well as head and neck surgery. In Dr. Lieberman's opinion, plaintiff's cancer was "most likely" caused by HPV based on Lieberman's "understanding of [plaintiff's] genetic test results, and the pathophysiology of his specific cancer." According to Dr. Lieberman, plaintiff's "cervical and subcarinal lymph node biopsies were positive for p16, a highly sensitive surrogate marker for the identification of [HPV]-driven tumors. Since the cancer appears to be due to [HPV], it is very unlikely to be caused by exposure to heat, radiation or a known carcinogen." Dr. Lieberman explained a cancer "that is p16 positive and results in mediastinal metastasis remains consistent with [HPV-]related cancer rather than inappropriate occupational exposures." Thus, Dr. Lieberman believed plaintiff's firefighting duties were not causative factors in his cancer's development because, in his experience, "cases of oropharyngeal cancer, specifically head and neck cancer that are p16 positive, are due to HPV."

¶ 14　　　　In February 2023, the Board issued its written decision and order. In relevant part, the Board determined plaintiff failed to show "that his act or acts of duty, or the cumulative effects thereof, caused or contributed to his disability," and he further failed to show "that his cancer was related to his service as a firefighter." In coming to its conclusion, the Board

acknowledged the differences of opinion between the IMEs and Dr. Orris but afforded "paramount weight to the opinion of Dr. Campbell" because he was "a board-certified oncologist and therefore in the best position to opine on the cause of the [plaintiff's] cancer." The Board assigned "the least weight to the opinion of Dr. Orris." The Board also pointed out "the overwhelming medical evidence show[ed] that the [plaintiff's] cancer was caused by HPV" and "was not the type that may be caused by exposure to heat, radiation, or a known carcinogen as defined by the IARC." And even though plaintiff asserted "that smoke 'could be a cause or factor in the development' of his cancer," the Board determined plaintiff failed to "come forward with sufficient evidence that smoke *was* a cause in his cancer." (Emphasis in original.).

¶ 15        In June 2023, plaintiff filed an amended complaint for administrative review. He also filed a brief in support of reversal of the Board's decision, contending the Board erred in denying him line-of-duty and occupational disability pension benefits. He further argued the Board and IMEs failed to use "the proper legal causation standards in their determination of [his] case." Specifically, plaintiff claimed the hearing officer should have indicated that a claimant must only show that a duty-related injury is a causative factor contributing to the disability, and they need not prove that their job duties were the sole or even primary cause of their disability. Plaintiff further asserted the Board and IMEs "apparently were given a 'memorandum of legal principles' " that was not "made part of the administrative record." Ultimately, plaintiff requested the Board's decision be "reversed and remanded *** for additional proceedings to consider whether exposure to carcinogens during firefighting might or could have been 'a factor' in the development of [his] cancer."

¶ 16        The Board filed a response in opposition to administrative review in October 2023, arguing plaintiff forfeited his argument regarding the "causation standards" because he

"agreed that the hearing officer's recitation of the legal principles was complete" and failed to raise it before the Board. The Board further argued the overwhelming weight of the evidence supported its decision to deny plaintiff's application for line-of-duty and occupational disability pensions. The Board pointed out that all three IMEs concluded "that HPV was the most likely cause of [plaintiff's] cancer, not his service as a firefighter," and it was " 'the one tumor type to get that you can't really pin on anything else.' "

¶ 17    Following a hearing in November 2023, the circuit court entered an order upholding the Board's denial of line-of-duty and occupational disability pension benefits to plaintiff.

¶ 18    This appeal followed.

¶ 19    II. ANALYSIS

¶ 20    On appeal, plaintiff argues the Board and the IMEs failed to use "the proper legal causation standards in their determination of [his] case." The Board initially responds that plaintiff failed to raise this issue during the administrative hearings and, therefore, it is procedurally forfeited.

¶ 21    "It is quite established that if an argument, issue, or defense is not presented in an administrative hearing, it is procedurally defaulted and may not be raised for the first time before the circuit court on administrative review." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212, 886 N.E.2d 1011, 1019 (2008). "The rule of procedural default in judicial proceedings applies to administrative determinations, so as to preclude judicial review of issues that were not raised in the administrative proceedings." *Cinkus*, 228 Ill. 2d at 212-13.

¶ 22        In his reply brief, plaintiff claims the issue was, in fact, before the Board (1) by his recitation of the "proper causation standard" during his opening statement and in his posthearing brief and (2) by his questioning of the IMEs about causation during the administrative hearings. But the record reveals plaintiff agreed with the hearing officer's recitation of the pertinent legal principles on the first day of hearings. Further, plaintiff acknowledges in his appellant's brief that the memorandum of legal principles—which he cryptically implies improperly defined the "issue of causation" and upon which the IMEs allegedly relied in performing their medical evaluations—was "never made part of the administrative record." The appellant bears the burden "to present a record which fairly and fully presents all matters necessary and material for a decision of the questions raised." *Interstate Printing Co. v. Callahan*, 18 Ill. App. 3d 930, 932, 310 N.E.2d 786, 789 (1974). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392, 459 N.E.2d 958, 959 (1984). The fact is, plaintiff first claimed the Board and IMEs utilized an incorrect standard of causation during administrative review proceedings in the circuit court. As a result, plaintiff's arguments pertaining to this issue are forfeited. *Cinkus*, 228 Ill. 2d at 212-13.

¶ 23        But notwithstanding plaintiff's forfeiture, he fails to show that the Board relied on an improper "causation standard" or that its decision was unsupported by the evidence. To be eligible for line-of-duty disability benefits under section 4-110 of the Pension Code, a firefighter must establish that he, "as the result of sickness, accident, or injury incurred in or resulting from the performance of an act of duty or from the cumulative effects of duty is *** physically or mentally permanently disabled for service in the fire department." 40 ILCS 5/4-110 (West 2022); see also *Carrillo v. Park Ridge Firefighters' Pension Fund*, 2014 IL App (1st) 130656, ¶ 23, 6

N.E.3d 782 (To obtain a line-of-duty pension, a claimant must prove a duty-related incident was "a causative factor contributing to the claimant's disability."). In order to obtain an occupational disability pension by reason of a disabling cancer, "(i) the type of cancer involved must be a type which may be caused by exposure to heat, radiation or a known carcinogen as defined by the [IARC] and (ii) the cancer must (and is rebuttably presumed to) arise as a result of service as a firefighter." 40 ILCS 5/4-110.1 (West 2022). "A disability pension shall not be paid until disability has been established by the board by examinations of the firefighter at pension fund expense by 3 physicians selected by the board and such other evidence as the board deems necessary." 40 ILCS 5/4-112 (West 2022). "The 3 physicians selected by the board need not agree as to the existence of any disability or the nature and extent of a disability." 40 ILCS 5/4-112 (West 2022).

¶ 24        "Whether a disability is duty-related is a question of fact reviewed under the manifest weight of the evidence standard." *City of East Peoria v. Melton*, 2023 IL App (4th) 220281, ¶ 63, 218 N.E.3d 471. Factual findings are against the manifest weight of the evidence only if the Board clearly should have reached the opposite conclusion, or if the findings are "unreasonable, arbitrary, and not based upon any of the evidence." *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 271, 807 N.E.2d 423, 430 (2004). It is the Board's function to judge the credibility of the witnesses, assign weight to the evidence, and resolve conflicts in the medical evidence. *Gatz v. Board of Trustees of the Maywood Police Pension Fund*, 2019 IL App (1st) 190556, ¶ 24, 147 N.E.3d 244. "We do not reweigh the evidence or substitute our judgment for that of the *** Board. [Citation.] If the record contains evidence to support the *** Board's decision, the decision should be affirmed." (Internal quotation marks

omitted.). *City of Peoria v. Firefighters' Pension Fund*, 2019 IL App (3d) 190069, ¶ 34, 144 N.E.3d 676.

¶ 25        Here, nothing in the record indicates the Board or the IMEs "failed to use the proper legal standard of causation." Instead, it shows the opposite. Based on the medical evidence presented, the Board determined plaintiff failed to show "that his act or acts of duty, or the cumulative effects thereof, caused or contributed to his disability." See 40 ILCS 5/4-110 (West 2022). The Board also concluded plaintiff's cancer "was not the type that may be caused by exposure to heat, radiation, or a known carcinogen as defined by the IARC," and he failed to show "that his cancer was related to his service as a firefighter." See 40 ILCS 5/4-110.1 (West 2022). And even though plaintiff asserted "that smoke 'could be a cause or factor in the development' of his cancer," the Board determined plaintiff failed to "come forward with sufficient evidence that smoke *was* a cause in his cancer." (Emphasis in original.). See *Carrillo*, 2014 IL App (1st) 130656, ¶ 23. Ultimately, the Board adopted the opinions of the IMEs and concluded "the overwhelming medical evidence show[ed] that the [plaintiff's] cancer was caused by HPV." In coming to its conclusion, the Board afforded "paramount weight to the opinion of Dr. Campbell" because he was "a board-certified oncologist and therefore in the best position to opine on the cause of the [plaintiff's] cancer." The Board assigned "the least weight to the opinion of Dr. Orris."

¶ 26        In Dr. Campbell's opinion, plaintiff's cancer did not arise as a result of his service as a firefighter and "was not caused by heat, radiation, or a known carcinogen that he would have been exposed to at work." According to Dr. Campbell, other head-and-neck cancers unrelated to HPV rarely test positive for the presence of the p16 molecule, and a primary lesion is usually found. However, "p16 positivity, especially when diffusely positive on a specimen as

[plaintiff's] samples were, is pathognomonic for a cancer caused by HPV" and "the one tumor type to get that you can't really pin on anything else." Dr. Campbell also pointed out why plaintiff's metastasized biopsy samples tested negative for the HPV 16 and 18 genotypes, stating, "[W]hen cancers spread and metastasize, they become more deranged" and "oftentimes lose the HPV positivity."

¶ 27        Dr. Samo did not believe plaintiff's cancer resulted from an act of duty, the cumulative effects of duty, or otherwise from his service as a firefighter. Although Dr. Samo believed that "almost all" cancers could be caused by exposure to heat, radiation, or a known carcinogen as defined by the IARC, he noted there was no agreement in the relevant medical literature "on the association of head and neck *** cancer with firefighting." He also found "[n]othing in the literature talk[ing] about causation." For Dr. Samo, the negative test results of plaintiff's metastasized biopsy samples did not "remove [HPV] as a cause" because there are "over 100 different HPV varieties," and the tested-for genotypes were just "the two most common ones involved."

¶ 28        Dr. Lieberman concluded plaintiff's cancer was "very unlikely to be caused by exposure to heat, radiation or a known carcinogen." Rather, it was "most likely" caused by HPV, based on Dr. Lieberman's "understanding of [plaintiff's] genetic test results, and the pathophysiology of his specific cancer." According to Dr. Lieberman, the "cervical and subcarinal lymph node biopsies were positive for p16, a highly sensitive surrogate marker for the identification of [HPV]-driven tumors." He further explained a cancer "that is p16 positive and results in mediastinal metastasis remains consistent with [HPV-]related cancer rather than inappropriate occupational exposures." Thus, in Dr. Lieberman's view, plaintiff's firefighting duties were not causative factors in his cancer's development because, in his experience, "cases

of oropharyngeal cancer, specifically head and neck cancer that are p16 positive, are due to HPV."

¶ 29    In sum, after carefully considering this record, we cannot say the opposite conclusion than that reached by the Board was clearly evident. Despite the contrary opinion of Dr. Orris, the record contains sufficient evidence to support the Board's decision. See *City of Peoria*, 2019 IL App (3d) 190069, ¶ 34.

¶ 30                                    III. CONCLUSION

¶ 31    For all these reasons, we affirm the circuit court's judgment.

¶ 32    Affirmed.