2026 IL App (1st) 250443-U

FIRST DIVISION
May 11, 2026

No. 1-25-0443

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| JACQUELINE WOODRUFF, | ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 24 CH 03899 |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, | ) | |
| | ) | |
| | ) | Honorable Allen P. Walker, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

ORDER

¶ 1  *Held*: We affirm the trial court's order and confirm the administrative decision rendered by the Illinois Department of Human Services. Plaintiff has failed to demonstrate that the administrative agency clearly erred when it determined that her failure to cooperate with its rules justified a termination of services.

¶ 2  Plaintiff filed this case for administrative review following an adverse administrative decision by the Illinois Department of Human Services. The Department concluded that plaintiff's refusal to execute a particular form constituted a failure to cooperate in complying with its service plans and other administrative rules that justified a termination of the services it was providing to plaintiff. Plaintiff appealed the administrative decision to the circuit court. On

administrative review, the circuit court affirmed the Department's decision. Plaintiff now appeals to this court, and we confirm the Department's decision and affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4      Plaintiff Jacqueline Woodruff is disabled and she receives various services from defendant, the Illinois Department of Human Services. Plaintiff applied for an environmental modification to her home through services provided by the Department under the Rehabilitation of Persons with Disabilities Act (20 ILCS 2405/0.01 *et seq.* (West 2024)). The Department granted her request. Plaintiff was approved to receive a stair chairlift and a walk-in bathtub at her residence.

¶ 5      The Rehabilitation of Persons with Disabilities Act (*id.*) is designed to "provide for rehabilitation, habilitation and other services to persons with one or more disabilities, their families and the community." To carry out the purposes of the Act, the Department runs a Home Services Program which includes services such as adult day care, home delivered meals, and the service at issue in this case, environmental modification. 20 ILCS 2405/3(f) (West 2024).

¶ 6       For the environmental modification program, the Department provides "[s]ervices to physically modify the customer's home to accommodate the customer's loss of function in the completion of his/her Activities of Daily Living." 89 Ill. Adm. Code § 686.600. The Department bears some or all of the cost of the environmental modifications, depending on the recipient's ability to pay. 20 ILCS 2405/3(f) (West 2024). However, there is a $25,000 limit on the modifications for a five-year period. 89 Ill. Adm. Code § 686.605(c). The Department requires all providers of construction services to carry $500,000 in liability insurance, maintain

appropriate contractor licenses, and obtain all necessary building permits, among other requirements. 89 Ill. Adm. Code § 686.608.

¶ 7    In March 2022, a company named Lifeway Mobility was approved to perform work on plaintiff's home. After the work was done, a representative of the Department inspected the home and determined the contractor had not adequately completed the work, with the Department recognizing that the work was "substandard." The Department solicited bids from new contractors to perform the remedial work. A new contractor, Access Elevator, was selected. The Department approved a one-time exception to the $25,000 cap on the cost of services to cover the cost of completing the work which would raise the price of the modifications to $36,622.

¶ 8    The Department informed plaintiff that it would require her to execute a form called an Environmental Modification Statement of Responsibility before the remediation work could begin. The form explains the responsibilities of the various parties including the Department, the selected contractor, and the recipient of the services. The form states that it constitutes an agreement between the contractor and the recipient of the services and, as a result, any dispute that arises between the contractor and the recipient shall be resolved between them, without the Department's involvement. The form concludes by stating that "[f]ailure to agree to the Statement shall render the Environmental Modification null and void."

¶ 9    Over the course of a ten-month period, plaintiff and Department employees had several meetings and exchanged many emails and phone calls to persuade plaintiff to execute the Statement of Responsibility. But plaintiff refused to execute the document. The communications included the director of the Home Services Program, advocates from the long-term care ombudsman, plaintiff's rehabilitation counselor, and employees from Access Elevator. The

Department offered to modify the Statement of Responsibility to indicate that the Department would remain involved in the project "in extraordinary circumstances as those presented here."

¶ 10    During the period of trying to convince plaintiff that signing the Statement of Responsibility was in her best interest, plaintiff raised concerns to the Department about whether the subcontractors Access Elevator would be using would have the proper licenses. The Department reminded plaintiff that it had requirements that the providers were properly licensed and that the representative from Access Elevator had assured all parties that all contractors would be properly licensed. Access Elevator also sent plaintiff copies of its contractor's licenses such as its plumbing and elevator licenses from state and local entities and its general contractor's license from the City of Chicago. Plaintiff was unpersuaded. Plaintiff pointed out that the administrative regulation requires all contractors to "meet the approval of the customer" and the Department (citing 89 Ill. Adm. Code § 686.608(a)) and there was nothing in applicable administrative regulations that required her to sign a Statement of Responsibility before the work began.

¶ 11    Plaintiff provided the Department with the names of contractors she wanted to perform the work. The Department explained that, if plaintiff rejected Access Elevator, it would be required to re-open the bidding for the project. The Department informed plaintiff that the contractors she had suggested for the project could bid for the work so long as they met the requirements to qualify as set forth in the administrative regulation. The Department, however, also informed plaintiff that regardless of who was selected to perform the work, it would require her to execute the Statement of Responsibility before any work could begin.

¶ 12    On September 23, 2023, following nearly a year of discussions about how the parties could go forward with beginning the remediation work, the Department sent plaintiff a lengthy

letter concerning the project. The Department recapped what had transpired with the project and with its communications with plaintiff before advising plaintiff that she had two options for moving forward. One, plaintiff could agree to work with Access Elevator and sign the Statement of Responsibility with the modification it had offered to her, or two, plaintiff could reject Access Elevator as a provider and the bidding process could be restarted where she could sign a new Statement of Responsibility with the contractor that was subsequently awarded the project.

¶ 13     In this letter, the Department acknowledged plaintiff's contention that the Environmental Modification Statement of Responsibility is not specifically mentioned in Illinois statutes or administrative regulations. The Department pointed out, however, that recipients of Home Services Program services are required to "cooperate with service providers, HSP staff, and representatives in complying with HSP service plans, reassessments of eligibility and other administrative rules related to HSP (citing 89 Ill. Adm. Code § 677.200 (k, l))." The Department explained that the Statement of Responsibility is required as part of its program operation and is a condition for receiving an environmental modification.

¶ 14     The Department informed plaintiff that it was committed to continue working with her. However, it explained that if plaintiff would not sign even the modified Statement of Responsibility, then it would terminate its involvement in the project. The Department explained that it had done everything in its power to help rectify the problems arising from the original remodeling, going above and beyond for plaintiff by offering to exceed the financial limit for modifications, finding a new contractor to do the remediation work, and even offering to amend the Statement of Responsibility to address her concerns.

¶ 15     Plaintiff responded to the letter by email. Plaintiff rejected the option of agreeing to work with Access Elevator. Plaintiff stated that Access Elevator did not meet all the requirements for a

provider under the Administrative Code, specifically section 686.608(a) and (e). Plaintiff stated that the copies of the licenses sent by Access Elevator were not Chicago licenses and, as such, Access Elevator did not qualify to do the work under the applicable regulation. Plaintiff also rejected the option of restarting the bidding to select a new provider. Plaintiff contended that this project was not a new home modification that would require a bidding process, but rather a remediation of prior substandard work. Plaintiff explained that she had found three contractors licensed by the City of Chicago who had agreed to perform the work, and she urged the Department to approve the contractors she approved so the home modification could move forward.

¶ 16    The Department responded to plaintiff's email in a letter dated October 10, 2023. The Department explained that it had given plaintiff two options to allow the Home Services Program to complete her bathroom modification. The Department explained that because plaintiff rejected both of the proposals offered, it was therefore terminating its involvement in the project due to plaintiff's failure to cooperate as required by the administrative regulations (citing 89 Ill. Adm. Code § 677.200).

¶ 17    Plaintiff appealed the Home Services Program's decision to terminate services. She filed a request for a hearing with the Department of Human Services. Plaintiff indicated that the Home Services Program had terminated its involvement because it wanted her to sign an Environmental Modification Statement of Responsibility that is not part of the Administrative Code.

¶ 18    Under the Administrative Code, if the Department modifies or terminates a service, the recipient of services may appeal. 89 Ill. Adm. Code § 510.20(b). The appeal proceeds to a hearing before an administrative law judge. *Id*. §§ 510.10(a), 510.90. At the hearing, the service recipient has the burden to prove, by a preponderance of the evidence, that the Department's

decision was incorrect. *Id*. § 510.105(f). After the administrative law judge issues a recommendation, that recommendation is reviewed by the Department's Secretary, who issues a final administrative decision. *Id.* § 510.80(j)(3).

¶ 19    Plaintiff's appeal proceeded to a hearing before an administrative law judge. Nine witnesses testified at the administrative hearing including plaintiff, an employee of Access Elevator, one of the contractors plaintiff wanted to work on the project, and representatives of the Department and its Home Services Program. A transcript of the administrative hearing is included in the record.

¶ 20    Plaintiff maintained at the hearing that Access Elevator was unsuitable under the administrative regulations because it lacked the necessary certifications. Plaintiff elicited the testimony of Darryl Montgomery, one of the contractors she wanted to be awarded the job. Montgomery stated that the licenses Access Elevator showed to plaintiff were insufficient because they were not from the City of Chicago. Montgomery explained that the plumbing and electrical work required a contractor with a license from the City of Chicago because the City conducted special inspections on those types of work. Plaintiff explained that she did not want to sign the Statement of Responsibility because she believed that she would be held liable if something went wrong.

¶ 21    The Department provided testimony that Access Elevator was properly licensed and was an approved vendor. According to the testimony, Access Elevator had been a long time provider of home modifications for the Department. Witnesses testified that Access Elevator's licenses were appropriate and, because its own licenses were sufficient, its subcontractors did not need to be separately licensed. Eric Hanson, a Department Bureau Chief, testified that the Department had been using the Statement of Responsibility as a precondition for construction services for

many years, with the form provided to plaintiff being used since October 2020 but with the requirement existing "well before that."

¶ 22    The administrative law judge issued findings of fact and a recommendation that the Department's termination of services be upheld. The ALJ noted that plaintiff was notified about the need to sign the Statement of Responsibility but that her refusal constituted a failure to cooperate with the Department and its service providers. The ALJ found that plaintiff had the burden to prove that the Department's decision was incorrect and that she provided no evidence to support such a finding.

¶ 23    The ALJ's recommendation proceeded on to the Department's Secretary in accordance with the applicable procedure. The Department's Secretary adopted the ALJ's findings and agreed with the recommendation to terminate plaintiff's home modification services. The Secretary's decision became the final administrative decision for plaintiff's appeal.

¶ 24    Plaintiff appealed the Department's decision by seeking administrative review in the circuit court. After the matter was briefed and an evidentiary hearing was held, the circuit court affirmed the Department's decision to terminate the environmental modification. The circuit court found, in a written order, "that the Department's decision to terminate its involvement in the environmental modification was not clearly erroneous." The circuit court explained that the Department presented evidence that it had advised plaintiff of the relevant requirements and proposed accommodations to address her concerns. The court found that the "evidence supports the Department's conclusion that Petitioner refused to cooperate with Home Services Program (HSP) service providers, staff, and representatives in complying with HSP service plans, as required by 89 Ill. Adm. Code § 677.200."

¶ 25 The circuit court further found that plaintiff "failed to meet her burden of proof." According to the circuit court, plaintiff "did not present credible evidence to refute the Department's findings, demonstrate that she completed the required paperwork, or establish that the Department's decision was mistaken." The circuit court concluded that, because plaintiff failed to contradict the Department's findings, the court was not left with a definite and firm conviction that a mistake was made, as would be required for disturbing the administrative decision.

¶ 26 Plaintiff now appeals the administrative decision to this court.

¶ 27                                   ANALYSIS

¶ 28 Plaintiff, *pro se*, appeals the Department's decision to terminate the service it offered to plaintiff to physically modify her home to accommodate her disability and to help her to function in the completion of her daily activities. See 89 Ill. Adm. Code § 686.600. Plaintiff argues that the Department did not follow the appropriate governing authorities when it terminated her services under the environmental modification program.

¶ 29 The Department argues that plaintiff's brief on appeal should be stricken and her appeal dismissed due to plaintiff's failure to comply with the Illinois Supreme Court Rule governing briefs on appeal. See. Ill. S. Ct. R. 341 (eff. Oct. 1, 2020). The Department points out that plaintiff's statement of facts is a single sentence that does not contain appropriate references to the record on appeal. The Department further points out that, although other portions of plaintiff's brief contain excerpts from the record, those portions still do not provide sufficient information to understand the argument made. Additionally, the Department highlights that plaintiff's arguments consist of "little more than a bare legal conclusion coupled with factual statements," and plaintiff makes no effort to apply the law to the facts, engage with the

Department's decision or reasoning, or otherwise explain why the Department erred in its decision.

¶ 30    We agree with the Department's assessment that plaintiff's brief fails to comply with the Illinois Supreme Court Rules governing briefs on appeal. The statement of facts section in plaintiff's brief fails to provide the facts necessary to understand the case. Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). Plaintiff's one sentence statement of facts section fails to comply with the governing rules. Supreme Court Rule 341 requires a statement of the facts, with citation to the record, necessary for an understanding of the case and a clear statement of contentions with supporting citation of authorities and pages of the record relied on. Ill. S. Ct. R. 341(h)(6), (h)(7) (eff. July 1, 2008). While some of the necessary facts are presented in plaintiff's argument section, with some references to the record on appeal, the factual recitations still fail to accurately characterize the testimony and the other evidence in the record in violation of Rule 341.

¶ 31    In addition, plaintiff's argument is insufficiently clear. She presents unsupported contentions, fails to adequately apply the law to the facts, and does not engage with the Department's decision or the proper standard for reviewing the decision. The appellate court is not a depository in which the appellant may dump the burden of argument and research. *Gandy v. Kimbrough,* 406 Ill. App. 3d 867, 875 (2010).

¶ 32    When an appellate brief or appendix fails to comply with the Supreme Court Rules, we are entitled to, among other actions, dismiss the appeal or summarily affirm. *Prawdzik v. Board of Trustees of Homer Township Fire Protection District Pension Fund*, 2019 IL App (3d) 170024, ¶ 34; *Vancura v. Katris*, 238 Ill. 2d 352, 373 (2010). Compliance with the Rules governing the form and contents of appellate briefs is mandatory. *McCann v. Dart*, 2015 IL App

(1st) 141291, ¶ 12. Supreme Court Rules "are not aspirational," they "are not suggestions," they "have the force of law," and the presumption must be that they will be obeyed and enforced as written. *Rodriguez v. Sheriff's Merit Commission,* 218 Ill. 2d 342, 353 (2006).

¶ 33     Plaintiff's *pro se* status does not relieve her of the burden of complying with the Rules governing appellate procedure. *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2001). We could strike plaintiff's brief and dismiss her appeal or affirm the Department's administrative decision on the sole basis that plaintiff's brief fails to comply with the applicable Supreme Court Rules. *Vancura*, 238 Ill. 2d at 373. Bearing in mind that plaintiff's brief could be stricken for its failure to comply with the Rules, we nevertheless address the merits of the appeal because there is enough information in the record and in what we can obtain from plaintiff's brief to provide a review on the merits. See *North Community Bank v. 17011 S. Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (even when there are significant violations of the Supreme Court Rules governing briefs, the reviewing court can choose to reach the merits of the appeal where appropriate).

¶ 34     This appeal arises out of an administrative proceeding and, in this particular case, is governed by *certiorari* rather than the Illinois Administrative Review Law (735 ILCS 5/3-101 *et seq*. (West 2024)). If the statute creating or conferring power on an administrative agency does not expressly adopt the Administrative Review Law, as here, a party may seek review of a final agency decision through a common law writ of *certiorari*. *Dubin v. The Personnel Board of the City of Chicago*, 128 Ill. 2d 490, 498 (1989). The nature and extent of judicial review is virtually the same under *certiorari* as it is under the Administrative Review Law. *Id*.

¶ 35     Whether review is pursuant to the Administrative Review Law or via *certiorari*, the proper standard of review depends upon whether the question presented is one of fact, one of

law, or a mixed question of fact and law. *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 50 (citing *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008)). An administrative agency's findings of fact are considered *prima facie* true and may only be reversed if they are against the manifest weight of the evidence. *Id.* Questions of law are reviewed *de novo. Id.* Mixed questions of law and fact, where we analyze the legal effect of a given set of facts, are reviewed under the clearly erroneous standard. *Id.* In an appeal of an administrative review action, our role is to review the decision of the agency, not the decision of the circuit court. *Du Page County Airport Authority v. Department of Revenue*, 358 Ill. App. 3d 476, 481 (2005).

¶ 36    When, as here, the administrative agency incorporates the determinations of the administrative law judge into its decision and makes no additional independent factual findings, it is appropriate to consider the findings of fact and conclusions of law of the ALJ to determine whether the agency's decision is clearly erroneous. *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 21. Thus, we will reverse the Department's decision only if we are left with the " 'definite and firm conviction,' " based on the record as a whole, that the Department made a mistake. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001).

¶ 37    Here, the Department's decision to terminate the service it offered to plaintiff was based on its determination that plaintiff failed to cooperate with the agency and the program requirements, as set forth in the applicable regulatory scheme. The question presented is a mixed question of law and fact that requires us to look at the Department's factual determination that

plaintiff failed to cooperate and determine whether the Department properly followed the regulatory scheme when it decided to terminate the services offered to plaintiff.

¶ 38     Plaintiff argues that the Department erred when it determined that her refusal to sign the Environmental Modification Statement of Responsibility constituted a failure to cooperate under the Agency's regulations. Under the Home Services Program's regulations, it is the responsibility of the recipient of agency services to "cooperate with service providers, HSP staff, and representatives in complying with HSP service plans, reassessments of eligibility and other administrative rules related to HSP." 89 Ill. Adm. Code § 677.200(l). Plaintiff, however, contends that the failure to sign the Statement of Responsibility does not fall within the scope of that section because that section "concerns service plans and eligibility reassessments, not signing a specific contractor agreement."

¶ 39     The regulation, however, is more broadly worded than plaintiff suggests. The Department requires a service recipient's cooperation in both complying with the program's service plans and with other administrative rules. In interpreting the regulation, the Department determined that plaintiff's failure to sign the Statement of Responsibility constituted a failure to cooperate under the administrative regulation. We defer to an agency's interpretation of its own regulations, and we conclude that a failure to cooperate could properly be determined by plaintiff's refusals to follow the program's requirements. Administrative agencies are given substantial deference in construing their own statutes and rules, and the role of a reviewing court is limited to determining whether the agency's construction and application are plainly erroneous or inconsistent with long-settled construction. *Bloom Township High School Dist. 206, Cook County v. Illinois Education Labor Relations Board*, 312 Ill. App. 3d 943, 954 (2000). The Statement of Responsibility can fairly be interpreted as both part of a service plan and as an

administrative rule related to the Home Services Program, with which plaintiff was required to comply in order to continue to receive benefits.

¶ 40    At the administrative hearing, Department witnesses testified that signing the Statement of Responsibility was a long-term prerequisite for receiving environmental modifications, going back at least several years before the relevant events in this case. The form was a standardized statement that was universally applicable; the Department did not single out plaintiff for different treatment but merely required her to meet a condition that all other service recipients were required to meet. The testimony at the administrative hearing demonstrated that the requirement that plaintiff sign the Statement of Responsibility as a condition of further work was consistent with the Department's administrative rules and that it was within the Department's discretion to require compliance with the condition. It is reasonable to conclude that the requirement of signing the Statement of Responsibility is a valid administrative rule related to the Home Services Program, even if it is not expressly outlined in the administrative regulations.

¶ 41    Our decision in *Park v. Coler*, 143 Ill. App. 3d 727, 734 (1986) is instructive here. In *Park*, the plaintiff was receiving public benefits. A change in the law dictated that the agency administering the benefits was required to calculate the family's income before awarding benefits. *Id.* at 728-29. The agency, therefore, required the plaintiff to sign a form listing her family members and their income. *Id.* at 729. The plaintiff failed to comply with the agency's demands, and her benefits were terminated for a failure to cooperate. *Id.*

¶ 42    The plaintiff in *Park* argued that the administrative agency had no authority to require her to sign the document certifying the family's income. *Id.* at 734. We, however, rejected the plaintiff's argument. We explained that the agency's requirements demanded that plaintiff furnish essential information, including executing the form at issue. *Id.* We explained that the

fact that the agency required the plaintiff to complete a particular form, which was not expressly set forth in any specific regulation, "was a detail for which no rule was required." *Id*. As such, we confirmed the administrative agency's decision to terminate the plaintiff's benefits for a failure to cooperate. *Id*. at 734-35.

¶ 43    The result and analysis in *Park* is equally applicable to the facts in this case. The Department concluded that its regulations required plaintiff to cooperate with the Department by executing the Statement of Responsibility. Plaintiff has failed to demonstrate that the Department's construction of its own rules was plainly erroneous or inconsistent with long-settled construction. See *Bloom Township*, 312 Ill. App. 3d at 954.

¶ 44    Moreover, review of the entire record demonstrates that the Department vigorously attempted to accommodate plaintiff's reservations and correct her misunderstanding that executing the form would subject her to personal liability. The record shows that for a ten-month period, the Department engaged in substantial good faith efforts to communicate with plaintiff and resolve her concerns about signing the Statement of Responsibility. The Department employed high-ranking employees and engaged with plaintiff directly and with those who were helping to provide care to plaintiff to try to provide her with assurances and show her that signing the agreement was in her best interest and was the only way the project would move forward. The Department offered concessions to plaintiff and continued to restate its desire and commitment to completing plaintiff's home modification. Plaintiff, however, continued to refuse to meet the Department's conditions and refused both of the proposed courses of action, and the parties were left at an impasse.

¶ 45    Plaintiff continues to dispute whether Access Elevator had the proper certifications for performing the work at her home. However, the testimony at the administrative hearing provided

strong evidence that Access Elevator was properly certified and licensed to perform the environmental modification at issue. The company has provided services for the Department for many years, and the company's representative provided the licensing information in an attempt to ameliorate plaintiff's concerns. Plaintiff has failed to demonstrate that Access Elevator was, in fact, unqualified or unlicensed to perform the construction work. An administrative agency's findings of fact are considered *prima facie* true and may only be reversed if they are against the manifest weight of the evidence. *Cinkus*, 228 Ill. 2d at 210. A decision is against the manifest weight of the evidence only when the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence. *In re A.R.*, 2023 IL App (1st) 220700, ¶ 66. Plaintiff has failed to demonstrate that Access Elevator indeed lacked the required licenses and certifications so as to justify her refusal to cooperate with the Department.

¶ 46     The Department did not clearly err when it determined that its regulations required plaintiff to cooperate by executing the Statement of Responsibility. Thus, the Department similarly did not clearly err when it concluded that plaintiff's refusal to sign the form constituted an appropriate basis for the termination of services. The propriety of the Department's conclusion is reinforced by its ten-month-long efforts to secure plaintiff's cooperation and the significant concessions it offered to plaintiff to accommodate her concerns. Plaintiff has failed to leave us with a "definite and firm conviction" based on the record as a whole, that the Department made a mistake. See *AFM Messenger Service*, 198 Ill. 2d at 393. As such, plaintiff has failed to demonstrate an entitlement to relief on appeal.

¶ 47                                        CONCLUSION

¶ 48     For the foregoing reasons, we confirm the administrative ruling of the Illinois

Department of Human Services and affirm the decision of the circuit court.

¶ 49     Affirmed.